Good morning. May it please the Court, my name is Sean Kelly. I'm from the law firm of Riker, Danzig, Shearer, Highland and Peretti in Morristown, New Jersey. And I'm here today to argue on behalf of the appellant Gerling Global Reinsurance Company of America, who I will refer to in the argument today as Gerling. If I had to summarize the issues presented today, I would ask the Court to focus on what I believe the district court did in making four independent legal errors, each one of which would have allowed us to proceed on these claims. The other thing I would ask the Court in summarizing my argument is, even if the Court agrees with the district court that the Court was correct, these statute of limitation claims should still fall because the Court applied an improper standard for summary judgment. In effect, we have submitted 110 pages in our appendix of disputed issues of material fact, and we were supposed to get the benefit of every favorable inference. And I would respectfully submit that just the opposite occurred. The moving party got the favorable inferences and we didn't. Well, let's talk about the inquiry notice date. Yes, Your Honor. It's one thing to say that I was aware of the rumors and I called Fremont and they denied them. The fact of the matter is that there were press publications, were there not? Absolutely, Your Honor. Isn't that enough? The fact that you disagree with what they say isn't enough to put you to save the inquiry notice, is it? Your Honor, on the inquiry notice issue, I would submit that, and we've submitted an expert report and some case law, the first thing this Court has to consider is the context in which this dispute arose. This is a reinsurance situation which is governed by the duty of utmost good faith. It's recognized almost universally in all the courts, and we submit an expert report. But that's not responsive to the question. The question is whether or not those industry publications were the equivalent of storm warnings, if we were looking at this from a securities fraud standpoint. Your Honor, I'm sorry, I was trying to answer the question. My answer would be it would not be, because when our principals received those notices, they went directly to Fremont, to Mr. Maripino and the people involved. And they said, are these true? We've read them in the press. Are they true? And the response back from Mr. Maripino was, they are absolutely false. He has so testified. It's not a disputed fact in this case. So what I was trying to say, Your Honor, was, yes, there may have been some cause to do something, but we did something. And what I've tried to say in our expert report, etc. But is that really the point? If you're talking about the date of inquiry notice, in other words, the date that's triggered in terms of inquiry notice, that starts the process, does it not? And the fact that you made some inquiries doesn't solve the problem, because later on you actually went through a full detailed audit, as I understand it. That's correct, Your Honor, we did. And I guess my point would be, and I think it was a fundamental flaw in the district court's decision, is the district court looked at when our inquiry notice was of the fraud claims by the instrumentality, by the insurance company. This case is not about that. This case is about our fraud claims against the alter egos. And the district court found, in her original motion to dismiss, that we did not learn of the facts supporting our alter ego claims until after September 11, 2002. That's when the arbitration was filed. Counsel, the problem I have with your alter ego theory is, my understanding of alter ego theory has always been that it is essentially a means to pierce the protection of the corporate veil in order to reach through the shell and hold liable the parties behind the shell, who in law are determined to be the alter ego of the shell. The problem, however, is that you have to pierce that veil in some way. And you brought a claim against the shell. And I guess what you're telling us is you didn't really know that there were alter ego entities behind it until after discovering the arbitration proceeding. We brought a claim against the insurance company. And that's who we thought our relief was against. But you're now suing Mr. Rampino. And I thought you told us about three minutes ago that the first thing you did when the storm warning was received was to confront Mr. Rampino, who swore up and down that the reports were not true. So I'm having a hard time understanding why you didn't know facts sufficient at that time to trigger an obligation to name not just the shell, but also Rampino, who was not a party to the contract and who could not be held under the arbitration clause to participate in arbitration. It seems to me that what should have been done was a lawsuit should have been filed simultaneously against the alleged alter ego entities. And then you could have sought a stay of the lawsuit while you proceeded with the arbitration. Your Honor, when our principals went to Mr. Rampino, they went to Mr. Rampino as CEO of the instrumentality. They didn't go to Mr. Rampino in his individual sense. It was only after we started the arbitration that we learned that Mr. Rampino was directing, through other corporate entities, how these funds were going to be distributed. We knew we had a claim against the insurance company for fraud, but what we didn't know at that time was we had alter ego claims against Mr. Rampino. We only found that out when we got documents in the arbitration. Okay, but the theory, as I understand it, of the fraud is that Rampino was the actor who bound the insurance company to the fraudulent conduct. It was through his lips that the fraud was perpetrated, I guess would be the way to describe it. And now we're back to my original concern about alter ego theory. We've got two things going here. One is whether or not you can hold Rampino liable as, in essence, a co-conspirator or an aider and abetter to the fraud. Then we have another concern, and that is whether or not the judgment that you hope to obtain against the shell can bind Rampino by permitting you to pierce the veil when you go to execute on it. And I'm just having a hard time understanding why you didn't go after him at the get-go based on what you knew after the storm warning. Because, Your Honor, we didn't know enough. As I said before, we knew that the insurance company was engaged in fraudulent conduct. We did not know that Mr. Rampino, in addition to being the CEO of the insurance company, was directing and taking assets out of that company and putting in other companies. It's a completely different cause of action. And for purposes of this appeal, the court accepted that. The court says we're on inquiry notice in July of 1999. We completely disagree with that because we don't think there's any facts to support it. But putting that to the side, for purposes of the motion to dismiss, the court found that our claims against Mr. Rampino, we did not know until after September 11, 2002. So, Your Honor, I'm not trying to avoid your question. It's very complicated. And this brings me, I think, back to the other point. And that is, the law of the State of California, we think, is very clear. That you, as long as your claim is brought against the instrumentality in time, your alter ego claim is not barred by the statute of limitations. We think Hennessey stands for that. We think Worshipful Son stands for that. And we think Clawson stands for that. The district court judge ruled that if you did not bring your claim against the alter ego within the same time frame as the statute of limitations against instrumentality, your claim is barred. I respect, Your Honors, that can't be the case. Because in every California case I have cited, those alter ego claims would have been dismissed because they were not brought within the original statute of limitations. Let me ask you a hypothetical. Sure. If you had not settled with the, I guess it's the Commissioner of Insurance for the State. Yes. Who succeeded as receiver to the insurance company. Right. If you hadn't settled with the Commissioner, and you'd obtained an arbitration award against the entity. Right. What would have prevented you from enforcing that arbitration award against Rampino on a theory of alter ego liability without regard to statute of limitations? I assume I could have tried to do that. I assume I could have tried to file an amended complaint and bring him in. I don't think I could because Mr. Rampino was never a party to the arbitration. The arbitration is only between the seat. He has to be. Does he? If you are able to convince a court in supplemental proceedings when you're executing on your judgment. Right. That Rampino is in fact an alter ego. And therefore, the corporate entity is pierced. And the court in supplemental proceedings determines that Rampino is the real party here. Then under a valid alter ego theory, he's liable to pay the judgment, is he not? The only qualification I would put on that, and I haven't researched it, Your Honor, is I don't know how you can make somebody who is not a party to an arbitration agreement and therefore not a party to an arbitration award subject to that award. I think you have a pretty good argument. But that's what the alter ego theory is all about, that the award really is against Rampino because he's the alter ego of the insurance company. If it was an award issued by a court, I would agree with you. Because it's an arbitration award. But you're going to confirm the award in presumably a federal court and you're going to convert it to a judgment. Yes. Now you're going to execute on the judgment. So we're talking about supplemental proceedings and execution of an enforceable judgment and your theory is Rampino is liable because he's an alter ego. We don't care about statute of limitations at that point, do we? I don't think you would, Your Honor. And I don't think, and respectfully, I don't think you should care about alter ego claims at this point. I think it might make a difference. I mean, I read through those California cases, too, and they're hard to follow. They're hard to read. Because there's alter ego in the sense that I'm using it in my hypothetical. And then there's alter ego in the sense that you're urging upon us, which is essentially that from the very beginning, Gerling actually entered into a contract not just with Fremont but with Rampino because Rampino was the alter ego of Fremont. And that's the prong that you want to proceed on, so that in essence when you filed your arbitration demand, it was really against Rampino even though he wasn't named. I think, Your Honor, the prong that I want to follow on is just the holding that if you view the alter ego as the other self, which I think you have sort of described as the alter ego being the other self, that if you file a timely claim against the instrumentality, you've by matter of law filed a timely claim against the other self because it's the other self. And when I read those cases, I agree some of them are older and they're kind of difficult to read, but what I basically did was try to compare it with our case and what the district court did. And in every case, if the California court had followed what the district court judge did here, the alter ego claims would have been dismissed on statute of limitation grounds. But instead, on every case, the altered ego claims were allowed to stand under the theory that there is a policy. And we want to you can't by definition have a stale alter ego claim because it's the same claim against the same person. To my hypothetical, the problem with proceeding on the prong you want to go on is that there never has been a determination that Rampino is the alter ego of these entities. It wasn't part of the arbitration because that resulted in a settlement and you apparently released whatever, well, you didn't preserve, I guess, maybe a better way to describe it, claims against Rampino under an alter ego theory. Well, we did, Your Honor. Our release specifically said it's related to Fremont only. Right, without prejudice to whatever claims you may have against others. Correct. But that doesn't answer whether or not Mr. Rampino is the alter ego of the entity you settled with. So where I'm having problems following you on the statute of limitation issue is the fact that in essence what you did at that point was then take the $70 million that you got in settlement and initiate a lawsuit against Rampino on an alter ego theory claiming that he's liable for the remaining $128 million. Correct. But that's where I think you run into the problem with the statute of limitation because in law Rampino didn't have any notice at this point that he might be named in such an action and you're not going after him to execute on the $70 million judgment because you took it in settlement from the commissioner. You don't have a judgment to go after him on. And that's where I think you run into problems on the statute of limitation. Why am I wrong? Your Honor, it's never wrong. But what I would argue is Rampino did have notice. He's the alter ego of the instrumentality that was served. And that's the whole purpose of the case. The only way I think, Your Honor, you can read these cases is to say once the instrumentality is served within the statute of limitations and if you assume that the alter ego is the other self of the instrumentality, that's service and that's the way the law looks at it. The law looks at the alter ego as the same. Alter ego is not a new, as the cases say, it's not a new cause of action. But the problem in the California cases, I'm with you up to this point. The California cases say you can name the subsidiary and then under an alter ego theory in the same proceeding you can amend your complaint to add the parent because in law we assume that the parent had notice of the fact that you went after the subsidiary. And the parent can't object to being later dragged into the lawsuit because the statute of limitation had run. Because under the alter ego theory that might save adding a party to an already pending proceeding where there's a relationship. But I'm back to the concern I expressed before that you settled the claim before you sought to add anybody else to the litigation. And then you initiated a new round of litigation. You filed a lawsuit to go after the other parties that were not involved in the first action, the arbitration. Your Honor, which was exactly what was done in Clawson. In Clawson it was a tax proceeding against the corporation. And the state of California later determined that the individuals, not affiliated corporations, but the actual individuals had alter ego liability. What did they do? They filed a subsequent action. What did those individuals say? You can't file this action against me. Didn't the state get a judgment against Clawson? Now you're giving me the example of my prong of the alter ego hypothetical which is that a timely judgment was obtained from the corporation and then the state tried to enforce it. And using the alter ego theory, they went after the individual shareholders who then said, no, we weren't a part of the earlier proceeding. But the state said, yeah, but you're the alter ego of the corporation that we have the tax judgment against. And that's permissible under my prong of the alter ego theory. But, Your Honor, I'm just wondering, what is the reason for the distinction between what you've set up, maybe a partial satisfaction of a judgment and then going against it, and a partial settlement? We claim we've been damaged $200 million as a result of this reinsurance scheme. We've recovered $70 million. We can't recover anymore. Fremont is in liquidation. So we now have a $130 million claim left against somebody, and we believe that somebody is the alter ego. Now, if you accept California law, that at the time we filed the instrumentality, there no longer can be a statute of limitations based on alter ego, what is to prevent us from pursuing those? Well, that's where I'm not sure I agree with your last statement. But California cases recognize that there is still a statute of limitation and there's still a public policy against pursuing stale claims against parties that didn't have adequate notice. And notice generally means being served with some sort of process. Your Honor, there was never a requirement in any of those other cases in California that said you have to serve process on an alter ego defendant. Again, the conception, and maybe it's a fiction, but the conception is that the CEO of the instrumentality who is served with an arbitration demand, and if he has alter ego liability, he's got notice, he knows what's coming on. That's basically, I think, what the law says. You're right, Your Honor, it is a carve out from statute of limitations. There's a definite carve out from statute of limitations for alter ego. And the other point I wanted to make in front of Your Honor is not only did we not get the benefit of that carve out, but the district court told us, I don't care when you learned about your alter ego claims. I'm going to apply the statute of limitations when you learned about your underlying instrumentality claims. The district court said to us, your statute runs because you were on inquiry notice of your instrumentality claims in July 99. The court also found that we didn't know about our other claims against the alter ego defendants until after September of 2002. So, in effect, our statute of limitations ran before we knew of it. We had the claims. All right, thank you. Thank you, counsel. Your time has expired. Okay. We'll hear from the other side. If you may, please, the court. My name is Michael Leib, and I represent Fremont General Corporation and Fremont Compensation Insurance Group Bank, referred to in the briefs as FCIG. Mr. Richler is present. He represents Mr. Rampino. What I'd like to do, if possible, is allocate at least five minutes of my time to Mr. Richler. I'll try to keep an eye on him. You may do so, but you control the time, counsel, and you see the clock in front of you. Yes, and I will keep an eye on the clock. On the other hand, I don't want to walk away from the question either. All right. I was planning to start with the basic facts that are recounted in the brief, but given the argument that I've heard so far, it may be that the court wishes to focus on the alter ego issue, and I'd be happy to do that also. It seems to me that the case law is fairly clear on alter ego, which is that it is a doctrine that exists to provide an alternative method for compensation to an unsatisfied creditor, that a creditor who has a claim against one entity can take that claim and enforce it against another entity when he can show that he was defrauded or that by virtue of fraud it is unfair to respect the corporate separation between those two entities. In this case, that's not what we have. We have a situation in which Gerling Global brought suit against Fremont Indemnity Company, claimed to be a creditor of Fremont Indemnity Company. It's potentially significant to this case, although not probably to the concept, that the judgment actually, to the extent there was a judgment and it was a settlement, but the result of the settlement was Gerling paying money, not receiving a judgment. But at any rate, Gerling had no unsatisfied claim as a result of that arbitration proceeding. It had a settlement. The settlement was fully satisfied and there, therefore, was no judgment to take to try to enforce against any other parties, whether they be parent corporations or a former officer president of the company. I'll connect that up with the notice issue. The notice issue is not – let me back up. The fundamental point Mr. Kelly makes is that it is inappropriate to hold Mr. Rampino to a 99 notice, given the developments you've just talked about. In other words, the point being that Mr. Rampino was on notice of the commencement of the arbitration?  I'm asking you to respond to the argument that Mr. Kelly makes. Mr. Kelly, I think, made two completely different arguments. One argument related to Mr. Rampino's involvement in what he called the cover-up or concealment of the claim, and the other was his argument that Mr. Rampino must have been on notice of the arbitration. I'll address each of them. The argument is that in November of 1998, Mr. Rampino had a meeting with a Gerling representative in which he made comments that amounted to a denial of wrongdoing. I believe Judge Talman's point was, well, doesn't that place Gerling on notice when it later discovers, supposedly fraud, that Mr. Rampino was an actor? And I wholeheartedly agree with that. I think that actually harms the statute of limitations argument for them. They clearly know that Mr. Rampino is an actor. Mr. Lee, you can have an officer of a company who, doing the company's business, becomes, if you will, maybe even individually liable because he's acting in that kind of a capacity, but he wasn't sued. So when that arbitration went down and it was settled, everything was with Fremont. There was no claim so far as, what's the individual's name? Mr. Rampino. Rampino. Rampino doesn't have any notice at all that they're coming after him, individually. He knows they've gone after the company, they've got a settlement against the company, they've turned it into a judgment or whatever they do. But as far as he's concerned, no claim against him. And the reason for that, according to Mr. Kelly, is they didn't know they had a claim against, an alter ego claim against Rampino until later. I think he says September of 2002. That's when they finally got knowledge about all our discovery, were put on discovery as to Rampino. So why isn't the suit against Rampino timely? Well, the suit against Rampino, let me make two comments, if I could. Comment number one is, there's not a shred of evidence in the record to support the contention that Gerling did not find out about its supposed alter ego claims until 2002. The only citation to the record that they make for that proposition is to their own second amended complaint, which is insufficient as a matter of law. Secondly, the issue is when does the statute of limitations commence to run on the claim against Mr. Rampino? And it commenced to, there's no reason why it would have commenced to run against him at any later date than it commenced to run against Fremont Indemnity Company. He is being sued, I actually think that he's primarily being sued not as an alter ego, but as an independent actor, as Judge Thompson suggested. And his actions as an independent actor would have by definition been known to have been improper by Gerling at the time that they knew that Fremont Indemnity had acted improperly. Because at the time that Gerling knew that Fremont Indemnity had acted improperly, it would have known by definition that anything Mr. Rampino did was improper, either because he lied, according to them, and denied wrongdoing, or because he acted as a wrongdoer assisting Fremont Indemnity to perpetrate its wrong. There isn't any evidence in this record that they found some later fact about Mr. Rampino's actions that they did not know about at the time that they found out what Fremont Indemnity supposedly was doing. And let me add one other critical point here, because the issue isn't entirely what they knew. It's an inquiry notice issue. They, according to the district court's opinion, which is clearly well supported, there were numerous newspaper articles about Fremont Indemnity alleging improper underwriting. Gerling had conducted numerous audits. They were told in their 1999 audit that Fremont Indemnity had changed its underwriting. They knew in 1999 that their loss ratio on the treaty was at that point 146 percent. It ultimately grew to over 200 percent. So they knew they were going to lose money. They also found out that there was a shift in case reserves to IBNR, which is a fairly technical issue, but their point was that that was done to understate the loss reserves that Gerling would require and therefore cause Gerling to underprice the treaty. They knew that Fremont Indemnity was supposedly using the reinsurance, or at least they suspected that Fremont Indemnity was using the reinsurance to, quote, subsidize its business. Now, all of that may be relevant so far as the case against Fremont is concerned. What is your argument that that also automatically covers Mr. Rampino as well, in terms of the statute of limitations issue? Well, because all that Mr. Rampino – Mr. Rampino isn't alleged to have done anything that Fremont Indemnity didn't do. So that's enough? Oh, I absolutely believe that that's enough. Mr. Rampino was the president of the company at that time. He is charged essentially with directing Fremont Indemnity to commit this fraud. His independent action is not really independent in the sense that as president of the company, he supposedly misled Gerling about the validity of its claims. But that was in 1998, and the district court properly found that by the audit that was conducted in the summer of 1999, Gerling was on inquiry notice, and in fact, not only should they have suspected wrongdoing, they actually did suspect wrongdoing. And if I could continue from there, that wrongdoing or that knowledge of wrongdoing was then increased, if you accept Gerling's version of the facts, in 2000 and 2001, and particularly in 2001. There were conversations and memos and emails exchanged in which the company was actively discussing killing Fremont Indemnity for misleading Gerling. Mr. Rampino is part and parcel with Fremont's Indemnity Company. He was the president. If they thought that they had individual claims against Mr. Rampino, they were claims based upon Mr. Rampino's participation with Fremont Indemnity in this supposed scheme, and the statute certainly commenced to run. And I do want to again emphasize there isn't a shred of evidence in this record because it was not asserted below that Gerling found out new information about Rampino after the fact. That's just not in the record, and as I said, they cited to their own second amended complaint as authority for that proposition. As I recall, Mr. Kelly said that the trial court here, Judge Snyder, found that the Rampino claims were not known until September 11, 2002. Do you remember that comment he made? Yes, I do. What's your response? That did not happen. He said that Judge Snyder found that in response to the motion to dismiss the complaint. The court may recall that there was a first amended complaint. There was a motion to dismiss filed. It was granted in part and denied in part, and it was denied on not just against Mr. Rampino, but as to all of the defendants on the three claims that carried a three-year statute of limitations. The judge denied the motion to dismiss because she found based upon the first amended complaint that the plaintiff had in fact pleaded sufficiently delayed discovery. They then filed a second amended complaint because there was one cause of action dismissed. That was the cause of action for breach of contract. It was dismissed with leave to amend. When they amended, they amended to add the allegations about newspaper articles, and at that point it became clear to the court that there may actually be a valid statute of limitations argument that would dispose of the entire action. That is when the court converted the motion to dismiss the second amended complaint to a motion for summary judgment and allowed the parties an opportunity to conduct discovery, which they did for a year. So to argue that any ruling on the motion to dismiss the first amended complaint is binding on the judge when she's dealing with the evidence on summary judgment is, in my view, a non sequitur. And there was no distinction, as I said, between the treatment of Mr. Rampino and the other defendants in that first motion to dismiss except that Mr. Rampino was dismissed with prejudice from the breach of contract claim because he wasn't a party. Breach of contract claim was dismissed with leave to amend as to the other defendants, and that's when the plaintiff amended, and that's when we wound up in summary judgment, and that's when we wound up with a year of discovery. And at that point, when we reappeared in court for the summary judgment motion, they couldn't rely on the allegations in their complaint. They had to rely on evidence, and there isn't a shred of evidence in the record that they didn't discover Rampino's wrongdoing, nor is there any evidence in the record or even argument that Mr. Rampino had some separate wrongdoing that was different from Fremont Indemnity's. It's all one claim. The complaint all is focusing almost exclusively or is exclusively on Fremont Indemnity's conduct and the indirect liability of the other three defendants for Fremont Indemnity Company's wrongdoing. I was going to turn to the issue of the amendment to the judgment, if the Court wishes me to address that. Otherwise, I defer to Mr. Richler, who does represent Mr. Rampino. Very well. Thank you. Please, the Court. Paul Richler, Morgan Millicent Bacchius on behalf of Mr. Rampino. Your Honors, the California law is clear. The California Supreme Court in Wood v. Elling made it very clear that an alter ego claim does not give rise to a new statute of limitations. Alter ego, a claim accrues when the wrong happens. The wrong that allegedly happened happened back in 1998 or 1999. They were on inquiry notice, as the Court found, and I don't think there's any question about it, as of 1999. Alter ego is merely a way to say that you can pierce the corporate veil, essentially because the corporation that's being sued doesn't have enough assets to satisfy whatever claim is being made. It is not, as California courts have held on numerous occasions, a separate cause of action. It's a way to pierce the corporate veil. Now, in the hypothetical, if there had been a judgment, whether by arbitration or otherwise, against Gerling for $200 million, and Fremont Indemnity had only been able to satisfy $70 million of that judgment, and they then tried to pursue a claim afterwards against Mr. Rampino and Fremont General to satisfy that judgment, that's what would be an alter ego claim, and that's where there'd be no statute of limitations running. But you don't get another bite at the apple, maybe 20 years later, when you say, you know, we brought this cause of action that we voluntarily dismissed 20 years ago, but now we found out that we believe that Mr. Rampino or Fremont General was really controlling that corporation. You don't get to file a new lawsuit and a new claim, and that's exactly what the court in Wood v. Elling found. The statute doesn't start to run over again. The statute, the accrual, is the wrongdoing. This is a delayed discovery claim. The delayed discovery is not when you find out that someone's the alter ego. It's when you put on inquiry notice of the claim itself. And so I don't believe that there's any issue at all where Mr. Rampino can be held on an alter ego theory or Fremont General can be held on an alter ego theory. So what you're saying, Mr. Riffler, is that your statute of limitations begins when you're on inquiry notice, that you've been injured, and this insurance company did it to you, and so you've got a claim. So you go forward and you get your judgment, and somewhere during the course of that litigation or thereafter you find out, hey, there's really an alter ego here that's liable for all of this stuff. Let's name that person and try to get him liable to pay on this lawsuit that we filed. Let's get him to pay the unsatisfied judgment. Now, Judge Talman said, well, you might go into court then to amend your complaint, to add him or do something like that. Your lawsuit would have already started, so you would have, I guess, satisfied the statute of limitations. And whenever you go against that person you've now discovered, it really doesn't matter, I guess, because the statute of limitations was satisfied when you sued the principal, if you will, or the main actor. Correct. Is that right? That is correct. And you can do it either while the action is pending, You can do it at the inception of the action, which has happened many times, where you name someone as an alter ego right from the start and build your discovery on it and say, you know, we think really, as is often alleged, the smaller corporation doesn't have enough assets. We really think the larger corporation or its directors or whatever are really the controlling interests, and so we can sue from the inception. You can bring them in after the inception of the lawsuit by seeking leave to amend, and you can add them at the end after the lawsuit to enforce a judgment. That's the purpose of alter ego. But you don't get a right, you don't have a new statute of limitations, because you say after a case has either reached, well, the judgment wouldn't matter, but if a case is settled, you don't have a right to then go and file a new lawsuit and say, you know what, we never thought about this before, we never thought of making a claim before, but now we've discovered, or now we think we've discovered, because in this case there isn't any evidence about alter ego whatsoever, and I should remind the court that the burden on delayed discovery is on the party seeking to claim the delayed discovery, and there's no evidence about alter ego in any event. But putting that aside, there's no right to file a second lawsuit and say the new statute of limitations starts. No California law supports that. Suppose we were to say you're absolutely right, therefore there's no way that the Kelly people can go forward with this lawsuit, it's over, it's done. Suppose they go back to the other judgment, the other lawsuit, the judgment again, they got a judgment on that action, I guess, or they settled it in arbitration without, after arbitration, without a judgment, I guess. No, they had a judgment, I believe. They got a judgment. No, actually, no, they settled, that's correct. They settled. So there's nothing for them to go back to, I guess, to then add Rampino. Right, and that was their choice. There was no suit to enforce the arbitration award. Right. No need. Right. If there had been a suit, and by the way, the court asked about the distinction between whether it's arbitration or not, and it clearly makes no difference because if it's an arbitration award, at least it would lead to a judgment which is enforceable the same way. You don't need to be a party to the lawsuit, and you don't need to be a party to an arbitration if there's a judgment that can't be enforced and you're an alter ego. What do they have now, Mr. Richter? Have they got a settlement document? They've got a satisfied settlement. Satisfied settlement. Right. It's all over. They don't have anything. I guess they can't sue now because they've settled the case against the principal actor. Right. They've done that. They've settled the case against the principal actor, and they did not timely file a case within the statute of limitations against Mr. Rampino or the other defendants. And that's the way the statute of limitations works. They don't get to do it again. Is that what the district court did here? Is that the theory on which the district court proceeded? The district court seemed to go into a lot of detail on a lot of other stuff. Well, the district court went into a lot of detail on inquiry notes. Right. And I think she covered very carefully why there was inquiry notice. But the alter ego theory, which came up for the first time pretty late in the proceeding, I think the district court came to the exact right ruling on the law. Okay. I think you answered this before, but did the settlement with the commissioner involve the payment of money by girling to the commissioner of insurance? It did. It's a little more complicated than that because there was money that had been deposited in a security deposit. So it gave up its claim to that? It gave up some of its claim to that money, but effectively they got $70 million. And then their claim against the remaining defendants is now for $200 million, which includes? $128 or $200 million, whatever they say was the difference. Yeah. Whatever they say they had claimed but didn't. I understand that now. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision and the court will adjourn. Thank you.
judges: Thompson, O'scannlain, Tallman